## THE CLEMENT SMITH.

### THE PARISMINA.

(District Court, E. D. Louisiana. November 19, 1925.)

### No. 16726.

Collision ⬅105—Attempt of libelee to pass steamship at full speed at Algiers Point, in Mississippi, held responsible for resulting collision, under evidence.

In libel by ferryboat, struck and sunk by steamship attempting to pass another while traveling at high speed past Algiers Point, in Mississippi, in violation of rule 8 of Pilot Rules for Western Rivers and Local Regulations, requiring a point signal at Algiers Point, evidence *held* to show libelee steamship responsible for collision, and not steamship which she attempted to pass and had impleaded under admiralty rule 56.

In Admiralty. Libel by Morgan's Louisiana & Texas Railroad & Steamship Company against the steamship Clement Smith with the steamship Parismina, impleaded. Decree for libelant and for owner of steamship Parismina against libelee.

Denegre, Leovy & Chaffe, of New Orleans, La., for libelant.

Terriberry, Rice & Young, of New Orleans, La., for The Clement Smith.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, La., for the Parismina.

BURNS, District Judge. This case involves a collision between the steamship Clement Smith and a derrick boat belonging to the Morgan's Louisiana & Texas Railroad & Steamship Company, in the Mississippi river, at New Orleans, on August 10, 1921, about midday. The derrick boat was tied up to its landing on the city side of the river, near the landing of the Third District ferry, and, while in that position, was struck by the Clement Smith, carried a short distance out into the river, and was sunk.

The Calvert Navigation Company, owner of the Clement Smith, on the theory that the sinking of the derrick boat was caused by certain maneuvers forced on the Clement Smith by the improper navigation of the steamship Parismina, owned by the Parismina Steamship Corporation, impleaded the Parismina under rule 56 of the Admiralty Rules. This petition of impleader prayed for judgment against the Parismina for the damages claimed by the owner of the derrick boat, and also for certain considerable damages alleged to have been done to the Clement Smith in its collision with the derrick boat. The Clement Smith put up a release bond in the libel of the derrick boat owner, and the Parismina put up a release bond in the petition of impleader.

There is an acute conflict as to the signals exchanged between the Clement Smith and the Parismina just prior to the collision. Otherwise there is not much conflict in the testimony respecting the movements of the two vessels and all other vessels affecting the situation. As usual in such cases, each vessel's contention is sustained by the testimony of the several crews, and each seeks corroboration in the testimony of alleged disinterested shore witnesses. From this mass of testimony the following facts are shown by a fair analysis:

That on August 10, 1921, at about noon, the Parismina turned from her berth at the Julia street landing, assisted by the tug A. L. Bisso. When headed down the river, a little beyond midstream, near the Algiers side, the tug cast loose. As she proceeded toward Algiers Point, she was at half speed, and when she neared the point she blew one long blast, a point signal according to local rules of navigation. When about opposite Seguin street, in Algiers, she was put at full speed. This was at about 12:20 p. m., and her helm was put hard aport, so as to round the Point.

Meanwhile the Clement Smith was coming down the Mississippi river, light, having left Sarpy, La., some 30 miles above New Orleans, bound for the sea. The weather was clear and bright, without any wind. She was about midway between the middle of the river and the Algiers side. She was at full speed, traveling at the rate of somewhere between 12 and 15 knots an hour. She did not slacken her speed as she approached the congested traffic area in the port, so as to be under such control as common prudence might dictate. When opposite Algiers Point, she did not blow a point signal under local regulations.

Just about the time the Parismina was shaping to round the point, the evidence shows conclusively that the pilot and the

officers of the Clement Smith must have seen the Third District ferryboat somewhere between the Parismina and its Algiers landing, which is just around the point. Realizing that she could not pass the overtaken Parismina between its starboard side and the Algiers shore, her stem being then on the starboard stern quarter of the Parismina, and in realization of the immediate danger, she signaled two blasts, putting the helm hard astarboard in order to swing to port, and cleared the stern of the Parismina narrowly. Being unable to check her headway by merely stopping her engines, and in the face of another imminent collision presented by a tug and tow coming upstream towards and along the city half of the river, which she did not see previously across the point or across the obstructing hulk of the Parismina, and until after she had cleared the stern of the latter, the helm was then put hard aport in order to swing her to starboard, and the engines immediately put full speed ahead to accelerate this movement.

This maneuver was successful to the extent of barely clearing the tug and tow, but proved disastrous, because the accelerated headway swiftly brought her up close to the New Orleans shore, where she was unable to prevent herself from striking either the Third District ferry landing, ramming the shore, or damaging other shore property. Engines were put full speed astern, with the helm kept hard aport, in an effort to check her headway, and swing clear; but she touched the ferry pontoon of the ferry landing, doing some damage to the pontoon and probably her own propeller, delivering the force of the blow on the derrick boat, which she carried under her bow out into the stream, with the resultant damage and sinking. Thereafter she proceeded to anchor.

Meanwhile the Parismina, taking up headway with her engines at full speed, had rounded the point, when she straightened out downstream at a speed of about 6 knots. This vessel had not as yet sufficient time to take up full headway. The only other whistle signals the Parismina blew after exchanging signals with the Clement Smith were a passing signal of one blast with the tugboat above referred to, when the latter was off her port bow, and shortly thereafter two blasts, answering two blasts of the Third District ferryboat, above referred to.

The testimony of the pilot, Neihysel, of the Clement Smith, compels the conclusion that he not only ignored the local rules of navigation in regard to the point signal deliberately, but that he also ignored rule 8 of the Pilot Rules for Western Rivers, prescribing the duty of a steamer overtaking another steamer, and more particularly that clause which reads: "Every steamer overtaking another shall keep out of the way of the overtaken steamer."

This river pilot admits that the Clement Smith had come 32 miles from Sarpy, La., at full speed, which he supposes was about 13 knots, and that when the Parismina was overtaken she was going very much slower, which he supposes was probably 8 knots. Other evidence indicates, however, that she was not going any more than from 4 to 6 knots.

A great deal of stress is laid upon the alleged blowing of a four-blast danger signal by the Parismina. I have resolved the conflict of testimony upon this point against the Clement Smith; but even if, for the sake of argument, the Parismina had given such signal, the Clement Smith would probably be held in fault because of the clause in the first paragraph of rule 8:

"Or if the steamer ahead does not think it safe for the overtaking steamer to attempt to pass at that point, she shall immediately signify the same by giving not less than four short and rapid blasts of the whistle, and under no circumstances shall the overtaking steamer attempt to pass the steamer ahead until such time as they have reached a point where it can be safely done, when the steamer ahead shall signify her willingness by blowing one blast of the whistle for the overtaking steamer to pass on the starboard side of the steamer ahead, or two blasts of the whistle for the overtaking steamer to pass on the port side of the steamer ahead."

Moreover, in the last paragraph but one of rule 8, a sentence from which is quoted above, an overtaking steamer is defined as follows:

"Every steamer overtaking another shall keep out of the way of the overtaken steamer. Every steamer coming up with another steamer from any direction more than two points abaft her beam shall be deemed to be an overtaking steamer, and no subsequent alteration of the bearing between the two steamers shall make the overtaking steamer a crossing steamer within the meaning of these rules, or relieve her of the duty of keeping clear of the overtaken steamer until she is finally passed and clear. If the overtaking steamer is in doubt as to whether she is forward of or abaft this direction, she shall assume that she is an overtaking steamer and keep out of the way."

This feature of the rule is well recognized

and known generally. The Joseph Vaccaro (D. C.) 180 F. 272; The Greystoke (D. C.) 199 F. 521; The Mesaba (D. C.) 111 F. 215; The J. G. Gilchrist (D. C.) 173 F. 666.

Considering the testimony of Capt. Harry Miller, put forward as a disinterested witness, I have come to the conclusion that his testimony was designed to befriend the Clement Smith, because of his acquaintance with its master, even though he knew that the latter was not on board the vessel at the time of the collision. Likewise the behavior of the other disinterested witness, Mr. Fred Tieman, employed on the Canal Street ferryboat Thomas Pickles. His behavior on cross-examination compels the conclusion that his testimony should be disregarded.

Opposed to these was the testimony of Capt. James Brown, of the tug W. H. Wilmot, who was in his office on the Algiers river bank, some 2,000 feet above the Canal Street ferry landing, from where he noticed the ship coming down "very fast, with her bow very high; if anything, a foot out of the water." He called to his crew to get out in a hurry and "get ready; there is going to be something out here in a little while." His testimony is that he did this because the Clement Smith was coming too fast and too close, and the Point was not cleared, and he believed it would be necessary to use his tugboat, simply because the Parismina was in nearest to the New Orleans shore, the ferry was coming out, and there were some boats below the point. When asked the question, "How was she coming, the Clement Smith?" his answer was, "She was coming like a bat out of hell." He explained this by saying that she was coming at 14 or 15 miles an hour, at an awful speed, and close in to the Algiers shore.

The witness J. W. Tyler, a river pilot, testified that he saw the Parismina when the tug A. L. Bisso left, after turning her; that vessels descending the river turn Algiers Point, keeping close to the shore, so as to allow vessels coming up the river to go around outside the bend; that the Parismina followed this usual course, close to the Algiers shore, within a couple of hundred feet of the Point.

Capt. Robert Plant, the pilot of the Parismina, testified that the Parismina handled well throughout her trip from her berth to Pilot Town, where he turned her over to a bar pilot and she proceeded to sea. Incidentally, this and other evidence disposes of a theory advanced on behalf of the Clement Smith, that the Parismina sheered ashore unaccountably, or because of a defect in her steering gear, or other unseaworthiness.

There is much quibble about Plant's testimony, as to whether he said the Clement Smith passed within a hundred feet of the stern of the Parismina in a previous examination before the local inspectors, and thereafter testified in this case that the distance was a thousand feet. His confusion on this single point, however, did not detract from the value of his testimony otherwise. Other quotations from the witnesses would extend this opinion at too great length.

The conclusion is that the Parismina, in descending the river in the congested area, was proceeding at a safe speed, on the lookout for passing craft ahead of her, with which she was exchanging signals. She was not under the legal obligation of being on the lookout for boats behind her. She had the right to assume that any overtaking boats behind would exercise proper care. She was therefore not responsible for any damages in the premises. On the other hand, the Clement Smith could not have selected a more unsuitable place in the river than Algiers Point at which to have attempted to pass the Parismina at full speed; the latter at that time being engaged in signaling passing vessels in front of her and at the same time cautiously rounding Algiers Point, which is almost a right-angle turn in the river. The damages resulting were due entirely to her fault, for which she and her owners are liable.

There will be a decree accordingly against the Clement Smith in favor of the libelant, Morgan's Louisiana & Texas Railroad & Steamship Company, and the Parismina Steamship Corporation; costs to follow decree.